# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TSHOMBE MILLER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0120**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 16 CR 810

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Edward A. Czopur*, DeGenova & Yarwood, Ltd, 42 North Phelps Street, Youngstown, Ohio 44503 for Defendant-Appellant.

Dated:  August 21, 2018

---

**Robb, P.J.**

{¶1}    Defendant-Appellant Tshombe P. Miller appeals after being convicted of multiple rape counts in the Mahoning County Common Pleas Court.  He contends his constitutional rights were violated when he was convicted of multiple counts which were not differentiated in the indictment or bill of particulars and which he believes were not differentiated in the trial testimony.  He also believes this issue raises concerns as to whether the jury unanimously found him guilty of the same acts.  For the following reasons, Appellant's arguments are without merit.  The trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2}    Appellant was indicted on 21 counts after his two daughters reported sexual abuse to a Children Services caseworker in September 2015.  At the time of the disclosure, Child A was 14 years old (date of birth April 6, 2001), and Child B was 13 years old (date of birth May 2, 2002).  Counts 1 through 10 related to Child B.  The first five counts alleged rape of a child under 13, with a date range of May 2, 2014 to May 1, 2015 (the day before she turned 13), in violation of R.C. 2907.02(A)(1)(b), a felony/life.  The next five counts alleged rape of Child B by purposely compelling her to submit to sexual conduct by force or threat of force with a date range of May 2, 2015 (her thirteenth birthday) to September 28, 2015 in violation of R.C. 2907.02(A)(2), a first-degree felony.

{¶3}    Counts 11 through 21 related to Child A.  Count 11 charged gross sexual imposition for having sexual contact with a child under 13 between April 6, 2011 (when she turned ten) and April 21, 2011 (later amended to extend through June 22, 2011), in violation of R.C. 2907.05(A)(4), a third-degree felony.  Counts 12 through 16 charged rape of Child A when she was under 13 and specified a date range of April 6, 2011 through April 5, 2014 (the day before she turned 13).  *See* R.C. 2907.02(A)(1)(b).  Counts 17 through 21 charged rape of Child A by purposely compelling her to submit to sexual conduct by force or threat of force with a date range of April 6, 2014 (her

Case No. 17 MA 0120

thirteenth birthday) through September 28, 2015. *See* R.C. 2907.02(A)(2).[1] Sexual conduct involves vaginal intercourse between a male and female, anal intercourse, fellatio, cunnilingus, and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another (without privilege to do so). R.C 2907.01(A).

{¶4} The bill of particulars first pointed out the defendant was provided with open-file discovery available to the defense, which included notes from Children Services and the reports from the Child Advocacy Center. The state then provided some explanation of the counts, including how the dates aligned with birthdays. As to Child A, the bill of particulars explained: Appellant forced her to masturbate him when she was 10 at the family residence in the city of Campbell; between that time and the day before her thirteenth birthday, he engaged her in fellatio and digital penetration on multiple occasions; after she turned thirteen, he engaged her in fellatio and digital penetration on multiple occasions; he threatened to kill the entire family if she got pregnant; and he exerted authority over her as her parent. As to Child B, it was explained: the sexual abuse began when she was 12; between that time and her thirteenth birthday, Appellant engaged her in fellatio and digital penetration on multiple occasions; after she turned thirteen, he engaged her in fellatio and digital penetration on multiple occasions; he threatened her with a firearm; and he exerted authority over her as her parent.

{¶5} The case was tried to a jury in June 2016. Child A was 16 at the time of her testimony. She said she had 11 siblings. She outlined the pertinent family residences related to her memories. When she was ten, they lived in the city of Campbell, Ohio. Her mother left the family for a period of time. Appellant reconnected with her mother before Child A turned 12. (Tr. 404, 444). At this time, Appellant and the children moved into Plaza View Apartments on the east side of Youngstown with the mother. The family soon moved to Cameron Street on the south side of town. Later, they moved to Glenwood Avenue also on the south side of Youngstown. Appellant

---

[1]The ten counts for rape of a child under 13 originally contained the allegation he purposely compelled the victim to submit to sexual conduct by force or threat of force, which allegation could result in a longer time before consideration for parole on a life sentence when the victim is under 13. *See* R.C. 2971.03(B)(1)(a), (C). However, the state proceeded at trial only on the elements of sexual conduct with a child under 13 for counts 1 through 5 and counts 12 through 16.

subsequently moved in with his girlfriend on the west side of the city. Due to a collateral family issue at that time, the children were supposed to be staying with their grandmother but actually stayed with Appellant. (Tr. 437).

{¶6} Child A testified her first memory of being sexually abused by Appellant was when she was 10 ten years old and living with him in Campbell. (Tr. 404, 407-408). Appellant woke her up, inserted his fingers in her vagina, and made her masturbate him. (Tr. 408-409). She remembered this occurring after her tenth birthday as Appellant's birthday (June 22) approached. (Tr. 475). The state therefore amended the gross sexual imposition count in the indictment (and in the bill of particulars) to contain an ending date range of June 22, 2011. (Tr. 560). Child A said Appellant digitally penetrated her a second time when she was ten, stopped for a time, and then started again when she was 11. (Tr. 411). Digital penetration also occurred when she was 12 and 14 (but not when she was 13). (Tr. 411-412).

{¶7} When Child A was 12, Appellant forced her to perform fellatio. He continued to make her perform fellatio when she was 13 and when she was 14. It occurred too many times for her to count. (Tr. 412-413). She testified Appellant performed oral sex on her (cunnilingus) when she 12, 13, and 14. This occurred more than ten times (but not more than 20 times). (Tr. 413-414, 464-465). She remembers this occurring during the time they lived on Cameron, on Glenwood, and on the west side (at Appellant's girlfriend's house in 2015). (Tr. 465-466). Appellant subjected Child A to vaginal intercourse when she was 13 and 14. (Tr. 414-415). This first occurred when they lived on Glenwood. (Tr. 468).

{¶8} Child A remembered Appellant showing pornographic videos to her and Child B while they lived on Cameron. (Tr. 418, 459). Another time, he made her and Child B engage in oral sex with each other and then made Child B perform fellatio on him while he performed oral sex on Child A. This occurred on Mother's Day when they lived on Cameron. (Tr. 421, 456). At the time, their mother was getting a manicure, and they were "on punishment." (Tr. 421-422). In providing examples of the punishment inflicted by Appellant, Child A described how she would: "Get whooped with a belt, extension cord, get choked up, get kicked, get slapped, get punched." (Tr. 420). Appellant had guns and a "Rambo knife" in the house. (Tr. 420). As to

Appellant's instructions on keeping the sexual abuse a secret: he originally provided candy and told her not to tell; he then said not to tell or he would be "locked up for a long time"; he told her if she got pregnant and blamed him, he would "beat me until I die or he's gonna deny it and disown me"; he threatened, "[i]f we told somebody he would kill us"; and he stated, "I brought you into this world, I can take you out." (Tr. 408, 419, 425-426). She explained, "there's different ways you can mean by that, but his was death." (Tr. 426). She believed his death threats as he was abusive to everyone in the family, including her mother and the babies. (Tr. 419-420).

{¶9} Child B was 15 years old at the time of her testimony and just finished seventh grade. She confirmed the location and estimated dates of occupancy of the children's residences. She said her mother had 9 children, some fathered by Appellant who had legal custody of her during the abuse. The first time she remembered being touched by her father was when they briefly lived in the Plaza View apartments on the east side of Youngstown. (Tr. 370-371). Appellant made her and Child A sleep with him, and he put his fingers in her "private area" while she was sleeping which caused pain. (Tr. 344-345). She believed this occurred while her mother was at the hospital giving birth to her brother. (Tr. 344, 371). As this brother's birth occurred in December 2011, this would have made Child B under ten years of age at the time of the first rape offense. (Tr. 345, 371). She originally reported she was first abused at age 12, which ended up corresponding to her first subjection to fellatio. (Tr. 528, 547).

{¶10} After the first digital penetration, Child B felt as if Appellant put his fingers inside her "every time my mom would leave the house" and said it was too many times to count. (Tr. 345, 384). When they lived on Cameron Street on the south side of Youngstown, he would take her and Child A to the basement and "touch our inner private part" which she described as "[f]ingering" that would last for a long time and would hurt the whole time. (Tr. 366-368). She said they moved from Cameron Street to the residence on Glenwood Avenue near the end of 2014 (when she was 12). (Tr. 365). Appellant made Child B perform fellatio on him more than 20 times starting after her (twelfth) birthday in May 2014 and continuing in 2015. (Tr. 346-347, 385). Child B remembered Appellant forcing her to perform sexual acts in the summer of 2015, the spring of 2015, and the prior winter, but not during the fall of 2014. (Tr. 351-352).

{¶11} She said he once attempted vaginal intercourse with her on her mother's birthday, while she was home alone with Appellant and Child A; Appellant put "clear stuff" on his penis, but she refused to obey his commands to open her legs. (Tr. 345-346). Child B confirmed Appellant showed them pornography. (Tr. 353). Appellant told her and Child A he was getting them ready for life. (Tr. 347). She testified, "he already told us if we told anybody he was going to kill us" which she believed "[b]ecause he's threatening." (Tr. 348, 353-354). He had three guns in the house. On the day her mother caught Appellant touching her, Appellant brandished a rifle, aimed it at everyone in the room, and announced he was not afraid to kill them. (Tr. 348-349).

{¶12} Although this occurred in July 2015, the mother made no report of sexual abuse. The children ran away from home on more than one occasion. The sexual abuse did not stop for Child A until the end of September 2015, when Child B made statements to her guidance counselor suggesting abuse and Child A thereafter made disclosures to a Children Services caseworker. While another caseworker interviewed each child at the Child Advocacy Center, a nurse practitioner watched from behind one-way glass in order to gather information for the medical examination. Child A, who was 14, reported the abuse began when she was 10 and the last incident occurred three days before the disclosure when Appellant forced her to perform fellatio on him at his girlfriend's house. (Tr. 527-528). Child A recounted digital penetration, fellatio, vaginal intercourse, and being forced to masturbate her father. (Tr. 527, 548). She reported being forced to perform fellatio at the same time Child B was performing such act on him. (Tr. 556). The nurse practitioner testified Child B, who was 13, reported the abuse started when she was 12 and included fellatio and digital penetration. (Tr. 528, 541, 543, 547). The medical examination revealed both children were infected with the same sexually transmitted disease.

{¶13} After the state's case, the defense moved for acquittal. Counsel also argued the bill of particulars did not cure an issue he perceived with the indictment and bill of particulars involving "blocks" of rape counts with the same subsection of the rape statute, the same victim, and the same date ranges with no delineation of the specific conduct or dates that apply to each count. (Tr. 562-563). He cited the Sixth Circuit's *Valentine* case. (Tr. 562-564, 578). He concluded that before submitting the case to

the jury the state must delineate the alleged conduct as fellatio, digital penetration, etc. to correspond to each rape count. (Tr. 565-567). Counsel cited double jeopardy and due process principles. He said all 12 jurors must find Appellant guilty beyond a reasonable doubt and said juror unanimity on the type of sex act cannot be ascertained without a specific delineation of the counts. (Tr. 573). In discussing the jury instructions, the defense incorporated these arguments about the failure to assign a specific act (digital penetration, vaginal penetration, or fellatio) to each rape count. (Tr. 577-578). The jury instructions and verdict forms did not further delineate the counts by conduct.

**{¶14}** The jury found Appellant guilty of all 21 counts. The court sentenced Appellant to a mandatory life sentence on the ten counts corresponding to sexual conduct while the children were under 13; the court ordered Appellant to serve four of the life sentences consecutively and six concurrently. On the counts involving rape with force or threat of force (and not relying on an age of under 13), the court sentenced Appellant to eleven years on each count; the court ordered Appellant to serve four of these sentences consecutively and six concurrently. Appellant was also sentenced to a consecutive sentence of five years for gross sexual imposition. Appellant filed a timely notice of appeal from the August 8, 2017 sentencing entry.

ASSIGNMENT OF ERROR ONE

**{¶15}** Appellant sets forth two assignments of error, the first of which provides:

"Appellant was denied due process of law pursuant to both the United States and Ohio constitutions, had his right to protection against double jeopardy violated and was further deprived his rights pursuant to Article I, Section 10 of the Ohio Constitution as the State failed to distinguish the alleged crimes through indictment, bill of particulars and/or at trial."

**{¶16}** Appellant quotes the Sixth Amendment to the United States Constitution as follows: "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." He also quotes the following from Article I, Section 10 of the Ohio Constitution: "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." This guarantees the essential facts constituting the offense to be tried will be

found in the indictment issued by the grand jury. *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 14.

**{¶17}** An indictment is sufficient if it "contains a statement that the defendant has committed a public offense" which may be "in ordinary and concise language" and in the words of the applicable section of the statute, "provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B). An indictment can be amended "at any time" by the court if it does not alter the name or identity of the offense. *Pepka*, 125 Ohio St.3d 124 at ¶ 15. An indictment is not made invalid for stating the time imperfectly, and a date is not required to be charged unless it is an element. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781, 784 (1985), citing R.C. 2941.08(C). The indictment need not demonstrate the underlying facts that are not elements as this is the function of the bill of particulars. *Pepka*, 125 Ohio St.3d 124 at ¶ 23. The state should supply specific dates in response to a bill of particulars or demand for discovery with regard to an alleged offense *where it possesses such information*. *Sellards*, 17 Ohio St.3d at 171 (inexactitude where the state cannot be more exact is not violative of due process rights unless the defendant demonstrates prejudice). Notably, "when the state allows open file discovery, a bill of particulars is not required." *State v. Oliver*, 7th Dist. No. 07 MA 169, 2008-Ohio-6371, ¶ 38. *See also State v. McQueen*, 7th Dist. No. 08 MA 24, 2008-Ohio-6589, ¶ 24

**{¶18}** In discussing due process, Appellant also raises the related concept of double jeopardy, stating the notice of the charge assists a defendant in avoiding future double jeopardy issues. Article I, Section 10 of the Ohio Constitution states: "No person shall be twice put in jeopardy for the same offense." *See also* U.S. Const., Fifth Amend. (no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"). The double jeopardy clause prohibits re-prosecution for the same offense after a conviction (or an acquittal) and prohibits multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St. 3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. Appellant points out a constitutionally-valid indictment must contain the elements of the offense charged, fairly inform him of the charge against which he must defend, and enable him to plead an acquittal or conviction to bar any future prosecution for the same

offense. *State v. Childs*, 88 Ohio St.3d 558, 564-565, 728 N.E.2d 379 (2000), quoting *Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Appellant contends "carbon copy" charging of multiple rape allegations violates due process or double jeopardy where the offenses are not distinguished in the indictment, in the bill of particulars, or in the trial testimony.

{¶19} Appellant relies on the Sixth Circuit's *Valentine* case. In *Valentine*, the defendant was convicted in Ohio of 20 counts of child rape and 20 counts of felonious sexual penetration of a minor for abusing his eight-year-old step-daughter. The victim testified Valentine forced her to perform fellatio in the family living room on "about twenty" occasions, digitally penetrated her vagina in the family living room on "about fifteen" occasions, engaged in similar incidents in three different bedrooms, and anally penetrated her with his penis on "about ten" occasions. She apparently altered her numbers on cross-examination. The Eighth District found insufficient evidence for five of the felonious sexual penetration counts. The defendant filed a federal petition for a writ of habeas corpus arguing his due process rights were violated when he was convicted on an indictment which did not specify a date or distinguish the counts by conduct. The Northern District of Ohio granted the writ as to all charges. On appeal, the Sixth Circuit allowed two convictions to stand, one in each category. Although the court found no issue with the lack of specificity on dates and the use of a date range in the case involving a child victim of sexual abuse, the court found a problem with the lack of factual distinctions within each set of 20 counts. *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir.2005).

{¶20} The *Valentine* court essentially held the prosecution was required to specifically lay out a separate and detailed factual basis for each count and could not rely on the victim describing her step-father's "typical" molestation of her and estimating the number of incidents. *Id.* at 632-633. The court opined: "Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own." *Id.* at 633. The court said the jury could not have found him guilty of some counts within the block but not others, but then admitted the jury could have acquitted him of some of the counts if they believed the child overestimated the number of incidents. *Id.* at 633-634 ("due to the failure to differentiate, Valentine could

only successfully defend against some of the charges by effectively defending against all of the charges"). The court surmised the defendant had little ability to defend himself because each count was not "anchored" to a "distinguishable" offense. *Id.* at 633. "The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." *Id.* at 634 (explaining the state could have cured any due process problems in the indictment by delineating the factual basis for each count at trial).

{¶21} Additionally, the *Valentine* court found double jeopardy problems. For instance, the court concluded the lack of specificity in the indictment or in the trial record precluded Valentine from pleading his convictions as a bar to future prosecutions; the court also entertained the possibility he was subject to double jeopardy in his initial trial by being punished multiple times for the same offense. *Id.* at 634-635. The court believed: "As the charges were not linked to differentiated incidents, there is resulting uncertainty as to what the trial jury actually found. * * * When prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy." *Id.* at 636. The court also expressed concern as to jury unanimity as to the underlying factual basis for each offense. *Id.* Notwithstanding these holdings, the court permitted one conviction from each block of counts to stand; in that case, the court maintained two convictions, representing the two blocks of allegations.

{¶22} As Appellant relies on *Valentine*, he argues he could only be convicted of a single count of rape as to each group for each victim (meaning four counts of rape in this case corresponding to the four blocks of counts plus the gross sexual imposition). Initially, we must point out the Sixth Circuit does not rely on *Valentine* as precedent. *See, e.g., Coles v. Smith*, 577 Fed.Appx. 502, 507-508 (6th Cir. 2014) (rejecting this same argument by a defendant in a case of 43 undifferentiated counts of rape regarding his step-daughter as *Valentine* used an incorrect standard for habeas). In addition to rejecting the validity of *Valentine*, courts often distinguish *Valentine* where the state indicts on fewer counts than the child's estimate of the number of sexual abuse incidents. *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011-Ohio-1177, ¶ 42; *State v. Garrett*, 7th Dist. No. 08BE32, 2010-Ohio-1550, ¶ 28, 47. *See also State v. Moats*, 7th

Dist. No. 14 MO 0006, 2016-Ohio-7019, ¶ 42. Furthermore, a victim's provision of a definite minimum has been distinguished from the estimated total used against Valentine. *See, e.g., State v. Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 36; *Clemons*, 7th Dist. No. 10 BE 7 at ¶ 42.

**{¶23}** Appellant does not contend the indictment, bill of particulars, or trial testimony must contain an exact date where a "block" of charges alleges the same offense against a child and provides the same date range. And, there is no issue with the provision of a date range where the victim of rape is a child, especially where she lives with the perpetrator who is her father. *See, e.g., State v. Parker*, 7th Dist. No. 13 MA 161, 2015-Ohio-4101, ¶ 15-25 (each offense need not be differentiated by date). Regarding an indictment, "it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment." *Sellards*, 17 Ohio St.3d at 171 (where date is not an element), citing R.C. 2941.03(E).

**{¶24}** Appellant argues the failure to specifically assign a type of sexual conduct to each count of rape in the "block" at some point before submission of the case to the jury violated his constitutional rights. Although the rape counts had the element of "sexual conduct" and the victims testified to various types of sexual conduct, Appellant suggests the trial testimony did not refer to individual offenses. However, delineation of more than the indicted five acts of sexual conduct in each "block" of counts occurred in the trial testimony.

**{¶25}** As to Child A, Appellant was convicted of five counts of rape of a child under 13, five counts of rape with force or threat of force (estimated to have occurred after she turned 13), and one count of gross sexual imposition of a child under 13. As for estimates, Child A testified Appellant made her perform fellatio too many times for her to count, he performed cunnilingus on her more than 10 times but less than 20 times, and he digitally penetrated her throughout the four years of abuse. Child A set forth her first memory of abuse as Appellant waking her up when they lived at a certain residence in a certain city when she was 10 years old, occurring after her tenth birthday (April 6, 2011) and closer to Appellant's birthday (June 22). She described the offense of gross sexual imposition whereby Appellant made her masturbate him. During this same memory, Appellant committed rape of a child under 13 by digitally penetrating her

vagina. She remembered he later digitally penetrated her a second time when she was ten, stopped for a time, and then started again when she was 11. Digital penetration also occurred when she was 12. Appellant also forced her to perform fellatio when she was 12 and performed oral sex on her when she 12. She clearly spoke of more than five instances of sexual conduct when she was under the age of 13.

{¶26} As for the next five counts, which did not require the child to be under 13, digital penetration reoccurred when Child A was 14 (but not when she was 13). Appellant continued to make her perform fellatio when she was 13 and when she was 14, the last time occurring at his girlfriend's house just days before Children Services intervened. He continued to perform oral sex on her when she was 13 and when she was 14. She remembered him performing oral sex on her while they lived on Cameron (including during a threesome with Child B), on Glenwood, and on the west side (at Appellant's last girlfriend's house in 2015).

{¶27} When Child A was 13 and also when she was 14, Appellant subjected her to vaginal intercourse; this first occurred after they moved to Glenwood. One of the last times it occurred was in the bathroom at Appellant's girlfriend's house when the child's brother was downstairs playing a videogame. She spoke of more than five instances of sexual conduct occurring after she turned 13. Contrary to Appellant's argument on appeal, Child A did set forth testimony as to the acts corresponding to the counts and the state did not rely on estimates to satisfy the charges related to her. In fact, her estimates were greater than the number of counts filed against Appellant.

{¶28} As to Child B, Appellant was convicted of five counts of rape of a child under 13 and five counts of rape with force or threat of force (not involving a child under the age of 13). First, Child B provided the specific family residence (Plaza View apartments on the east side of Youngstown), location within the residence (Appellant's bed), and circumstances (why her mother was absent in the middle of the night) related to her first memory of sexual abuse by Appellant during which he digitally penetrated her vagina.[2] Child B said digital penetration later occurred in the basement of the house

---

[2] Although she believed it occurred before the date range provided for the rape of a child under 13 counts, this could have been amended had the objection related to this specific issue (testimony of incidents before the date range), and prejudice was not demonstrated (e.g., this is not a case of alibis; he was her father living with her and possessing legal custody of her). For the counts involving rape of a child under 13, the dispositive date was the end date, not the beginning date.

on Cameron; she was under the age of 13 when they lived on Cameron. This occurred more than once for prolonged sessions. The digital penetration occurred so many times that she testified she could not count the incidents.

**{¶29}** Child B also testified she was forced to perform fellatio on Appellant starting after her twelfth birthday in 2014 and continuing into 2015. The described sexual conduct did not occur in the fall of 2014 but then reoccurred in the winter before Child B turned 13. Additionally, her older sister testified to an episode on Mother's Day while living on Cameron where Appellant forced each child to perform oral sex on the other child and then made Child B perform fellatio on him (while he performed oral sex on Child A). As to the five non-life counts which did not require the victim to be under the age of 13, Child B testified the sexual conduct occurred in the spring of 2015 and in the summer of 2015. As the sexual conduct continued, the child began running away from home in July 2015. There was testimony revealing the children were sometimes forced to perform fellatio on Appellant together. Finally, Child B testified Appellant made her perform fellatio too many times to count. She then specified it was *more than 20 times* between her twelfth birthday in 2014 and the summer of 2015.

**{¶30}** Notably, this provided a definite minimum amount of times. Furthermore, the number of counts filed in relation to this child was less than the definite minimum number of times recounted in the testimony; in other words, the state did not file the exact amount of charges as the total estimate. *See, e.g., Moats*, 7th Dist. No. 14 MO 0006 at ¶ 45; *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 36; *Clemons*, 7th Dist. No. 10 BE 7 at ¶ 42. Regardless, this court does not follow *Valentine*. *See, e.g., State v. Adams*, 7th Dist. No. 13 MA 130, 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 36; *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 34-36; *Clemons*, 7th Dist. No. 10 BE 7 (finding no due process violations and opining potential double jeopardy concerns can be cured if they arise in the future).

**{¶31}** We noted this type of argument would improperly protect a defendant who committed multiple instances of the same offense against a child in his care. *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 36. "[A]s the dissent in *Valentine* noted, it is the province of the jury to determine if multiple acts occurred where they are estimated as

opposed to individually detailed." *Clemons*, 7th Dist. No. 10 BE 7 at fn. 2, citing *Valentine*, 395 F.3d at 641 (Gilman, J., dissenting) (while warning: "prohibiting the use of multiple identical charges in a single indictment would severely hamper a state's ability to prosecute crimes where a young child is both the victim and the sole witness. Young children often make difficult, forgetful, or uncooperative witnesses in abuse cases."). Contrary to the *Valentine* majority's claim, there is no indication the jury would believe a finding of guilt on one count in a block would require a conviction on another count merely because it was in the same block of counts. Lastly, we note the trial court instructed the jury: "The charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charges. Each of them is separate." (Tr. 674). *See State v. Shafer*, 8th Dist. No. 79758, 2002-Ohio-6632, ¶ 24.

**{¶32}** For all of the foregoing reasons, this assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶33}** On a related theory, Appellant's next issue presented for review asks whether "carbon copy" charging caused a problem with jury consensus. Appellant's second assignment of error contends:

"Appellant was denied due process of law pursuant to both the United States Constitution and Ohio Constitution as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case were not delineated."

**{¶34}** In addition to the notice provision quoted supra, the Sixth Amendment also provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." The due process clause of the Fifth Amendment provides: "No person shall be * * * deprived of life, liberty, or property, without due process of law * * *." This requires the prosecution to prove the elements of the offense beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "[T]he Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are

interrelated. * * * In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Id.* at 278. Appellant also relies on *Winship* which held the Fourteenth Amendment's due process clause protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Pursuant to Crim.R. 31(A), the verdict shall be unanimous.

{¶35} Appellant argues "there is no way to know, based on the trial testimony and jury instructions, that each juror considered specific testimony as to a specific charge." He concludes he was denied due process because it "is impossible to know what count(s) the jury convicted on as to what conduct" where the "acts in this case were not delineated." He therefore contends even if the types of sexual conduct were sufficiently delineated in the trial testimony, they were not aligned with any particular count in the jury instructions to ensure every juror was voting on the same instance of sexual conduct (e.g., fellatio, digital penetration, etc.). The state responds that the jury need not unanimously agree on the underlying type of sexual conduct constituting each count of rape, citing the Ohio Supreme Court's *Thompson* case.

{¶36} In *Thompson*, the defendant argued: the jury should have been instructed to make a specific finding as to whether he committed vaginal rape, anal rape, or both; some jurors may have found him guilty of one type and others may have found him guilty of another type of sexual conduct; and it was not possible to ascertain whether there was a non-unanimous finding as to the type of sexual conduct. *State v. Thompson*, 33 Ohio St.3d 1, 11, 514 N.E.2d 407 (1987). The Supreme Court found these arguments lacked merit and concluded there was no requirement for the reviewing court to have knowledge of the type of sexual conduct found by each juror. *Id.* "The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio." *Id. See also Shafer*, 8th Dist. No. 79758 at ¶ 23-32 (overruling a defendant's argument that the jury should have been instructed it must reach a unanimous determination identifying the specific conduct for each count); *State v. Bettem*, 7th Dist.

No. 93-B-6 (Aug. 30, 1995) (due process did not require the trial court to instruct the jurors they must unanimously agree on a specified act of sexual conduct). In accordance, this assignment of error is overruled.

{¶37} The trial court's judgment is affirmed.

Donofrio,J., concurs.

Bartlett, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**