[Cite as *State v. Thomas*, 2020-Ohio-633.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KENNETH THOMAS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0025**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 16 CR 411

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul Gains*, Mahoning County Prosecutor and *Atty. Ralph Rivera,* Assistant
Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th
Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee, and

*Atty. Rhys Cartwright-Jones*, 42 North Phelps Street, Youngstown, Ohio 44503, for
Defendant-Appellant.

February 21, 2020

**DONOFRIO, J.**

{¶1}     Defendant-appellant, Kenneth Thomas, appeals from a Mahoning County Common Pleas Court judgment convicting him of 19 counts of rape and sentencing him to two consecutive life sentences following a jury trial.

{¶2}     In 2007, appellant moved in with his girlfriend, A.R., and her son, O.M., who was four or five at the time.  Appellant and A.R. had a baby boy together in 2008, K.T.  Appellant appeared to have a good relationship with both boys and O.M. even called appellant "dad."

{¶3}     In mid-January 2016, appellant's and A.R.'s relationship ended.  Appellant moved out of A.R.'s house.  On March 17, 2016, O.M., who was now 13 years old, told his mother that appellant had been molesting him.  A.R. immediately took O.M. to the emergency department.  At the hospital, O.M. disclosed that appellant had been anally and orally raping him since he was approximately nine years old.

{¶4}     On April 21, 2016, a Mahoning County Grand Jury indicted appellant on 16 counts of rape, first-degree felonies in violation of R.C. 2907.02(A)(1)(b)(B), and three counts of rape, first-degree felonies in violation of R.C. 2907.02(A)(2)(B).

{¶5}     The matter proceeded to a jury trial.  The jury heard testimony from numerous witnesses including O.M. and appellant.  O.M. testified that appellant raped him "probably" 100 times.  He stated appellant would take him upstairs to the bedroom appellant shared with A.R. and order him to take off his clothes.  Appellant would then have anal or oral sex with him.  Appellant denied that these events occurred.  The jury found appellant guilty of all charges.

{¶6}     The trial court subsequently held a sentencing hearing.  It sentenced appellant to mandatory terms of life in prison on counts one through 16.  It ordered the life sentences on counts one and two to run consecutive to each other and the life sentences on counts three through 16 to run concurrent to each other and concurrent to the sentences on counts one and two.  The court sentenced appellant to 11 years on each of counts 17 through 19 to run concurrent to each other and concurrent to the

sentences in counts one through 16.  Thus, appellant's total aggregate sentence was two consecutive life sentences.

{¶7}     Appellant filed a timely notice of appeal on March 1, 2018.  He now raises three assignments of error.

{¶8}     Appellant's first assignment of error states:

IN ERROR, APPELLANT WAS DENIED DUE PROCESS OF LAW PURSUANT TO BOTH THE UNITED STATES AND OHIO CONSTITUTIONS, HAD HIS RIGHT TO PROTECTION AGAINST DOUBLE JEOPARDY VIOLATED AND WAS FURTHER DEPRIVED HIS RIGHT PURSUANT TO ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AS THE STATE FAILED TO DISTINGUISH THE ALLEGED CRIMES THROUGH INDICTMENT, AND/OR THE BILL OF PARTICULARS.

{¶9}     The indictment charged appellant with 16 counts of rape in violation of R.C. 2907.02(A)(1)(b)(B), rape of a child under age 13.  Each of those counts states:  that "on or between August 12, 2011 and August 11, 2015," appellant engaged in sexual conduct with O.M.; that O.M. was less than 13 years of age; and that appellant compelled O.M. to submit by force or threat of force.  The indictment also charged appellant with three counts of rape in violation of R.C. 2907.02(A)(2)(B), rape by force or threat of force. Each of those counts states: that "on or between August 12, 2015 and February 29, 2016," appellant engaged in sexual conduct with O.M.; and that appellant compelled O.M. to submit by force or threat of force.

{¶10}     Appellant argues that his indictment violated his right to due process and/or his right against double jeopardy.  He claims that the "carbon copy" charging of multiple child rape counts did not put him on notice of the charges against him and does not bar any future prosecutions for the same offenses.

{¶11}     In support of his argument, appellant relies on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005).  In *Valentine*, the appellant was convicted of 20 counts of child rape and 20 counts of felonious sexual penetration of a minor. The victim, the appellant's step-daughter, testified the appellant forced her to perform oral sex in the living room on

about 20 occasions, digitally penetrated her in the living room on about 15 occasions, engaged in similar incidents in three different bedrooms, and anally penetrated her on about 10 occasions.

**{¶12}** The appellant filed a petition for a writ of habeas corpus in federal court arguing his due process rights were violated when he was convicted on an indictment that did not specify a date or distinguish the counts by conduct. The Northern District Court of Ohio granted the writ of habeas corpus. The state appealed. The Sixth Circuit upheld two convictions, one in each category of offenses. The court found a problem with the lack of factual distinctions within each set of 20 counts. It did not find a problem with the use of a range of dates in the indictment.

**{¶13}** On appeal, the Sixth Circuit found that the prosecution should have specifically laid out a separate factual basis for each count and should not have relied on the victim outlining the "typical" molestation she suffered or her estimate on the number of incidents. *Id.* at 632-633. The court further found the lack of specificity in the indictment or in the trial record precluded the appellant from pleading his convictions as a bar to future prosecutions. *Id.* at 634-635. The court also considered the possibility that the appellant was subject to double jeopardy in his initial trial by being punished multiple times for the same offense. *Id.*

**{¶14}** Appellant acknowledges that this court previously declined to follow *Valentine* but urges us to reconsider. See *State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405, ¶ 1, appeal not allowed, 155 Ohio St.3d 1407, 2019-Ohio-944, 119 N.E.3d 434, ¶ 1 (2019).

**{¶15}** In *Triplett*, the appellant was indicted on four counts for injuries suffered by his four-year-old son occurring between December 6, 2016 and April 5, 2017. The first count charged appellant with domestic violence for knowingly causing or attempting to cause physical harm to a family or household member, a third-degree felony due to two prior domestic violence convictions. The second through fourth counts charged appellant with child endangering for recklessly abusing a child under 18, a second-degree felony where there was serious physical harm. The appellant was convicted of all charges.

{¶16} On appeal, the appellant raised the identical argument appellant now raises in this case asserting that his right to due process and his right against double jeopardy were violated because the indictment and bill of particulars failed to distinguish each crime and instead relied on "carbon copy" charging. *Id.* at ¶ 73, 78. The appellant relied on *Valentine* in support. This court explained why we do not follow *Valentine*:

> As we recently stated in *Miller*, this court does not follow *Valentine*. *State v. Miller*, 7th Dist., 2018-Ohio-3430, —— N.E.3d ——, ¶ 30, citing, e.g., *State v. Adams*, 7th Dist., 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 36; *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 34-36; *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011-Ohio-1177, 2011 WL 861847 (finding no due process violations and opining potential double jeopardy concerns can be cured if they arise in the future). This type of argument would improperly protect a defendant who committed multiple instances of the same offense against a child in his care. *Miller*, 7th Dist., 2018-Ohio-3430, —— N.E.3d ——, at ¶ 31, citing *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 36. Contrary to the *Valentine* majority's claim, there is no indication the jury would believe its finding of guilt on one count of child endangering would require a conviction on another count of child endangering merely because it contained the same elements and the same date range. Furthermore, the Sixth Circuit does not rely on *Valentine* as precedent. *Miller*, 7th Dist., 2018-Ohio-3430, —— N.E.3d ——, at ¶ 22, citing *Coles v. Smith*, 577 Fed.Appx. 502, 507-508 (6th Cir. 2014) (rejecting this argument by a defendant in a case of 43 undifferentiated counts of rape regarding his step-daughter as *Valentine* used an incorrect standard for habeas).

*Id.* at ¶ 83.

{¶17} Appellant makes no new arguments in this case and offers no reasons why we should not follow *Triplett*. Because appellant has failed to offer any support for overruling our precedent in *Triplett*, there is no reason for this court to deviate from our previous case law.

{¶18} Moreover, in this case O.M. testified that he did not remember the exact number of times appellant raped him because it happened too many times to count. (Tr. 336). But O.M. was able to testify that during the year that he was nine years old, appellant raped him at least once in the fall, at least once in the winter, at least once in the spring, and at least once in the summer. (Tr. 338). Thus, O.M. testified to at least four rapes when he was nine years old. O.M. went on to testify that appellant also raped him at least once during each of the four seasons when he was ten, eleven and twelve years old as well. (Tr. 338-339). This testimony would support counts 1 through 16, which charged appellant with rape of a child under age 13. O.M. also testified that appellant raped him at least once in the summer, fall and winter when he was 13 years old. (Tr. 339). This testimony would support counts 17 through 19, which charged appellant with rape by force or threat of force. Thus, O.M. testified to appellant committing each of the 19 counts of rape.

{¶19} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶20} Appellant's second assignment of error states:

IN ERROR, THE TRIAL COURT ERRED IN ALLOWING "EXPERTS" TO TESTIFY, ESSENTIAL, TO A WITNESS' VERACITY.

{¶21} Here appellant contends the trial court should not have allowed the nurse practitioner and the physician's assistant who examined O.M. to testify that O.M. was telling the truth when he testified. Appellant attempts to support his position by arguing that Mark Gorospe and Janet Gorsuch were offered as "truth experts" and, therefore, their testimony was required to meet the admissibility requirements of expert testimony.

{¶22} As the state points out, appellant did not object to either Gorospe's or Gorsuch's testimony at trial. Failure to object to trial testimony waives all but plain error review. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶23} In this case, physician's assistant Gorospe testified that he was on duty in the emergency department when O.M. came in. (Tr. 429-430). He stated that he took

O.M.'s medical history. (Tr. 431). Gorospe testified that O.M.'s mother reported that O.M. told her that her boyfriend had been touching him in his genital and buttocks area up until a month ago. (Tr. 431). Gorospe testified that O.M. reported that his mother's boyfriend started to touch him three years ago. (Tr. 431). He went on to testify that O.M. stated the boyfriend put his penis in O.M.'s rectum, never used a condom, and the boyfriend put his mouth on O.M.'s penis. (Tr. 431-432).

{¶24} Gorospe stated that he also conducted a physical examination of O.M. (Tr. 432). He stated that O.M. appeared quiet and embarrassed. (Tr. 433). Gorospe stated that he did not see any injuries during O.M.'s physical exam and O.M. did not appear to be in any pain. (Tr. 433). Gorospe agreed with the prosecutor that this appeared to be a case of "delayed disclosure" of sexual assault. (Tr. 434). He stated that the sexual assault children's services and the police were contacted. (Tr. 435).

{¶25} During cross examination, defense counsel asked Gorospe, "Your result here says probably sexual assault?" (Tr. 443). Gorospe responded, "I think my diagnosis is alleged sexual assault." (Tr. 443). Gorospe then stated, "I can't make that determination right there and then." (Tr. 443).

{¶26} Gorsuch, a nurse practitioner at the Child Advocacy Center at Akron Children's Hospital, testified that she also examined O.M. (Tr. 554). As part of O.M.'s examination, he was interviewed by a caseworker. (Tr. 555). Gorsuch, as part of her examination, watched the forensic interview via a two-way mirror. (Tr. 555). Gorsuch testified that during his interview, O.M. disclosed that starting when he was nine or ten years old his mother's boyfriend would take him upstairs, have him remove his clothing, and would either put his mouth on O.M's penis or he would put his own penis in O.M.'s anus. (Tr. 556-557). Gorsuch testified that she did not observe any physical injuries to O.M. during his examination. (Tr. 558-559). She stated that in most cases of child sexual abuse where there has been anal penetration, the child's physical examination is normal. (Tr. 559). Gorsuch further testified that O.M.'s was a case of delayed disclosure. (Tr. 562-563). She also stated she learned that O.M. had some bedwetting issues, which she testified is a symptom of stress in a child's life, and which issues ended around the time appellant moved out of O.M.'s home. (Tr. 563-564). She also learned that O.M. had a history of genital herpes that started around the same time O.M stated the sexual abuse

started. (Tr. 564-565). After the conclusion of the interview, the physical examination, and history report, Gorsuch stated her diagnosis for O.M. was "concerning for sexual abuse." (Tr. 566).

**{¶27}** Appellant relies on *State v. Schewirey*, 7th Dist. Mahoning No. 05 MA 155, 2006-Ohio-7054. In *Schewirey*, the appellant was convicted of five counts of rape of his step-children. On appeal, the appellant argued, among other things, that the trial court erred in allowing the testimony of Dr. Dewar, the physician who examined one of the children. Dr. Dewar opined that the child "was a victim of child sexual abuse." *Id*. at ¶ 42. Dr. Dewar based her conclusion primarily on the history that the child provided to her. The appellant argued that this testimony was the functional equivalent of giving an opinion on the child's veracity.

**{¶28}** This court examined two cases. First, we considered *State v. Burrell*, 89 Ohio App.3d 737 627 N.E.2d 605 (9th Dist.1993). In *Burrell*, an alleged child victim of sexual abuse was examined by a doctor. The physical examination showed nothing, but the doctor believed that the child "was sexually assaulted and molested." On cross-examination, the doctor admitted he based his opinion solely on the history the child gave him. The Ninth District concluded that this was an improper opinion on the veracity of the child. *Schewirey,* 2006-Ohio-7054, at ¶ 43. The appellate court reversed the conviction and remanded the case for a new trial because the expert's opinion that the child was abused was based solely on his assessment of the child's veracity. *Id*. at ¶ 45.

**{¶29}** We next examined *State v. Muhleka*, 2d Dist. Montgomery No. 19827, 2004-Ohio-1822. Like the doctor in *Burrell*, the expert opined that the child was a victim of sexual abuse despite the fact that there were no physical findings. In this case, however, the court found that the opinion was admissible because the expert relied upon "the information he received from his examination of the victim, the history of the family and the case, information he received from Trula Muhleka and Griesdorn, the interview with the victim, the review of the victim's drawing, and his past experience of dealing with approximately two hundred physically or sexually abused children" when reaching his opinion that the child was sexually abused. *Schewirey,* 2006-Ohio-7054, at ¶ 49, quoting *Muhleka* at ¶ 39. Because the expert's findings were "based upon all of the data he had

in front of him, not just the victim's statements," his opinion was not just a statement on the veracity of the child. *Id.*

**{¶30}** After examining those two cases, this court concluded:

> We agree with both the decisions in *Burrell* and *Muhleka*. An expert does not need to say, "I believe the child was sexually abused," in order to give an improper opinion on the child's veracity. When an expert bases their diagnosis on nothing more than what the child tells them, then their "diagnosis" is nothing more than an opinion on the child's veracity. To say otherwise would elevate form over substance. However, an expert does not need physical findings to reach a diagnosis. If the expert relies on other facts in addition to the child's statements, then the expert's opinion will not be an improper statement on the child's veracity.

*Id.* at ¶ 50.

**{¶31}** In this case, Gorospe repeated what O.M. reported to him. He then stated that his diagnosis was "alleged sexual assault." (Tr. 443). He stated that he could not make the determination of sexual assault "right there and then." (Tr. 443). Thus, Gorospe never actually offered his opinion on O.M.'s veracity.

**{¶32}** And as for Gorsuch, she stated her diagnosis was "concerning for sexual abuse." (Tr. 566). Thus, she too did not actually vouch for O.M.'s credibility. Moreover, Gorsuch relied on much more than O.M.'s statements in reaching her conclusions. According to her testimony, she considered O.M.'s interview, her physical examination of O.M., O.M.'s medical history including a diagnosis of genital herpes around the time the assaults allegedly began, and bedwetting that stopped when appellant moved out. Therefore, she clearly relied on other facts in addition to O.M.'s statements, meaning her opinion was not an improper statement on O.M.'s veracity.

**{¶33}** Furthermore, in another case from this district, we once again examined the question of whether an expert may opine on whether a child victim was telling the truth about abuse. In *State v. Smith*, 7th Dist. Mahoning No. 14 MA 0159, 2016-Ohio-3418, 66 N.E.3d 279, this court stated:

Case No. 18 MA 0025

"[R]ecent case law states that '*Boston* does not apply when the child victim actually testifies and is subject to cross-examination.' " *State v. Hupp*, 3d Dist. No. 1-08-21, 2009-Ohio-1912, 2009 WL 1110601, ¶ 20, quoting *State v. Thompson*, 5th Dist. No. 06CA28, 2007-Ohio-5419, 2007 WL 2938166, ¶ 50, quoting *State v. Benjamin*, 8th Dist. No. 87364, 2006-Ohio-5330, 2006 WL 2900036, ¶ 19 citing *State v. Fuson*, 5th Dist. No. 97 CA 000023, 1998 WL 518259 (Aug. 11, 1998). The Third District reasoned that "[w]hen the victim testifies, the jury is able to hear the victim's answers, witness her demeanor and judge her credibility completely independent of the other's testimony concerning the veracity of the victim." *Hupp* at ¶ 20, citing *State v. Amankwah*, 8th Dist. No. 89937, 2008-Ohio-2191, 2008 WL 1973532, ¶ 44. Accordingly, where the victim testifies, other witness testimony concerning the victim's veracity can be harmless error. *Thompson* at ¶ 51. Here, even if portions of Dr. Farris' testimony were problematic in some way, it was harmless error.

*Id.* at ¶ 45.

{¶34} Thus, based on our most recent statement on the issue, if the child witness testifies and is subject to cross examination, any problematic opinion testimony by an expert regarding the child's veracity can be harmless error.

{¶35} In this case, appellant took the stand and testified in detail as to what appellant had done to him. (Tr. 327-344). Appellant's counsel then extensively cross examined O.M. (Tr. 346-391, 397-398). Therefore, pursuant to Smith, even if there was some problem with Gorospe's or Gorsuch's testimony, it would be harmless error.

{¶36} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶37} Appellant's third assignment of error states:

IN ERROR, THE TRIAL COURT ERRED IN ISSUING CONSECUTIVE SENTENCES IN FAILING TO CITE AND SATISFY THE ELEMENTS OF R.C. 2929.14(C)(4).

Case No. 18 MA 0025

**{¶38}** In his final assignment of error, appellant argues that the trial court failed to make the findings necessary to sentence him to consecutive sentences.

**{¶39}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

**{¶40}** R.C. 2929.14(C)(4) requires a trial court to make specific findings when imposing consecutive sentences:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶41}** It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that

the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶42}** In this case, the trial court found that "consecutive sentences in this case are necessary to protect the public from future crime and to punish the defendant." (Sentencing Tr. 17). It then found that consecutive sentences "are not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public." (Sentencing Tr. 17). Finally, the court found "the offenses were committed during a course of conduct, and that the harm was so great that a single term does not reflect the seriousness of the defendant's conduct." (Sentencing Tr. 17-18). Thus, the trial court made each of the three required findings at the sentencing hearing. The court also reiterated each of these findings in its sentencing judgment entry.

**{¶43}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶44}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

Robb, J., concurs.

Case No. 18 MA 0025

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**