[Cite as *State v. Black*, 2018-Ohio-1342.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 16 MA 0085 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KEITH L. BLACK | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 2015 CR 852

JUDGMENT: Affirmed in Part.
Limited Remand.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. David L. Engler
181 Elm Road, N.E.
Warren, Ohio 44483

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: March 29, 2018

WAITE, J.

{¶1} Appellant, Keith L. Black, challenges his convictions in the Mahoning County Common Pleas Court for felonious assault and having a weapon while under disability. Appellant cites two issues on appeal. First, whether the trial court abused its discretion in overruling Appellant's objection to the admission of a photograph from Appellant's Facebook account into evidence. Second, whether Appellant's convictions for felonious assault and having a weapon while under disability were against the manifest weight of the evidence. For the reasons expressed below, we conclude that the trial court did not abuse its discretion in permitting the Facebook photograph to be admitted into evidence, as Appellant's own testimony satisfied the requirement of authentication for the Facebook post pursuant Evid.R. 901(A). Moreover, we conclude Appellant's convictions for felonious assault and having a weapon while under disability were supported by the manifest weight of the evidence. Appellant's assignments of error are without merit and the judgment of the trial court is affirmed in part. We must, however, remand the matter to the trial court for the limited purpose of entering a *nunc pro tunc* entry addressing the consecutive sentencing findings made at the sentencing hearing.

Factual and Procedural History

{¶2} In the early morning of August 14, 2015, Nicholas Duecaster ("Duecaster") drove to the Shell gas station on the corner of Midlothian Boulevard and South Avenue in Youngstown. While there, Duecaster saw Appellant. He knew Appellant because they had previously been incarcerated together.

**{¶3}** Appellant purchased cigars from the gas station and the two proceeded to modify them in order to smoke marijuana while in the parking lot of the gas station. Appellant requested a ride from Duecaster to Charlotte Hubbert's ("Hubbert") house on Lucius Avenue. Appellant and Duecaster both testified at trial and gave substantially similar testimony up to this point, when their descriptions of the events that followed differed.

**{¶4}** According to Duecaster, he drove Appellant to Hubbert's home, where Appellant exchanged crack cocaine received from Duecaster for pain medication from Hubbert. Duecaster remained outside in the car and testified that he became increasingly concerned when Appellant did not return for several minutes. Duecaster was uneasy because he had heard rumors that he was perceived as a "snitch." (2/22/16 Tr., p. 339.) Duecaster sent a text message "Black, north side" to his friend Andre Laury ("Laury") to indicate who he was with and where Appellant was from. (2/22/16 Tr., p. 355.) Laury was a clerk at the gas station and testified at trial that he saw Duecaster and Appellant together that day and also witnessed them depart in Duecaster's car. Duecaster was considering leaving Hubbert's residence when Appellant emerged from the house. Appellant asked Duecaster to take him to a house on Ravenwood Avenue. Duecaster complied and, on arriving at the Ravenwood address, Appellant exited the vehicle and asked Duecaster if he had change for $50. Duecaster reached for money in the center console of the car when Appellant produced a gun and demanded that Duecaster give him all his money. Duecaster attempted to drive away but Appellant shot him in his chest or upper

abdomen. Duecaster testified that Appellant jumped on the car while he was driving away and clung to the passenger side door frame before either jumping or falling off the car a short distance down the road. Duecaster continued to drive away, hitting street signs, before the car came to a stop and Duecaster was able to call 911.

{¶5} According to Appellant, prior to leaving Hubbert's house on Lucius, Duecaster pulled a gun on Appellant and attempted to rob him. Appellant testified at trial that, in order to protect himself, he lunged at Duecaster and the two struggled over the gun as the car began to move, the gun fired, and Appellant jumped out of the car.

{¶6} Following jury trial on February 22, 2016, Appellant was found guilty of felonious assault in violation of R.C. 2903.11(A)(2), (D), a felony of the second degree with an accompanying firearm specification pursuant to R.C. 2941.145(A). He was also found guilty of having a weapon while under disability in violation of R.C. 2923.13(A)(3), (B), a felony of the third degree.

{¶7} Appellant was sentenced to a term of eight years of incarceration on the felonious assault count; three years of incarceration for the accompanying firearm specification; and 36 months for having a weapon while under disability. The trial court ordered each count to run consecutively to one another, for a 14-year total prison term. Appellant filed this timely appeal.

## ASSIGNMENT OF ERROR NO. 1

THE COURT ERRED WHEN IT OVERRULED APPELLANT'S OBJECTION TO THE INTRODUCTION OF AN UNAUTHENTICATED FACEBOOK PHOTO.

**{¶8}** In his first assignment of error, Appellant contends the trial court erred in permitting a photograph from his Facebook social media account to be entered into evidence. Specifically, Appellant alleges the photograph was not properly identified or authenticated and that its probative value was substantially outweighed by the danger of unfair prejudice. The photograph is from Appellant's Facebook page, and depicts Appellant at a rap concert on the same day the incident at issue occurred. Appellant's hand is bandaged in the photograph.

**{¶9}** The trial court admitted Appellant's Facebook photograph into evidence over his objection that it was not properly authenticated. Appellant's counsel argued that the state received the photograph from the victim's sister before trial. The trial court, in overruling the objection, stated:

The Court finds the Defendant opened the door through his testimony about his physical condition. The State had no idea ahead of time as to what the Defendant would say on the stand. Furthermore, the picture goes to the credibility of the witness. Therefore, the Court will allow the State to use the picture.

(2/22/16 Tr., p. 570.)

**{¶10}** The decision whether to exclude or admit evidence is within the sound discretion of the trial court. *State v. McGuire*, 80 Ohio St.3d 390, 400-401, 686

N.E.3d 1112 (1997). A reviewing court will not reverse the trial court's decision absent an abuse of discretion.

{¶11} Evid.R. 901 provides for a liberal standard regarding the authentication of evidence. *State v. Teague,* 8th Dist. No. 90801, 2009-Ohio-129. Pursuant to Evid.R. 901(A), the requirement of authentication for evidence to be admissible "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Moreover, testimony by a witness with knowledge, "that a matter is what it is claimed to be," is an acceptable method of authentication. Evid.R. 901(B)(1). See *State v. Smith,* 7th Dist. No. 05 JE 1, 2006-Ohio-4684, ¶ 8.

{¶12} In the case *sub judice,* Appellant authenticated the Facebook photograph by his own testimony on cross-examination. Appellant testified on cross-examination about the extent of his injuries after the incident. Again, he claimed that Duecaster had brandished the gun and that the two began wrestling over it when it fired and Appellant jumped from a moving vehicle. He testified that his hands were severely injured with skin removed and that he had injured his leg and had a "serious limp." (2/22/16 Tr., p. 553.) He testified on cross, "I really -- I was handicapped. I was handicapped." (2/22/16 Tr., p. 553.) He also indicated that, although he was not bedridden, he left the house only on rare occasions.

{¶13} When presented with the photograph on cross-examination, which was admitted into evidence by the state, Appellant testified that it was a picture of him and his friend, and that he was familiar with the photograph. He testified that it was taken

on the same day of the incident at a rap concert in Cleveland. (2/22/16 Tr., pp. 571-572.)

**{¶14}** In his brief, Appellant complains that the state received the photograph from Duecaster's sister but that she was not called as a witness to authenticate the photograph. Evid.R. 901(B)(1) has been interpreted by courts to allow "any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." *TPI Asset Mgt. v. Conrad-Eiford,* 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 15. In response, the state asserts that Appellant himself authenticated the photograph when he acknowledged the time and location where it was taken and who he was with. In *State v. Gibson,* 8th Dist. Nos. L-13-1223, L-13-1222, 2015-Ohio-1679, the Eighth District concluded that "a combination of both personal knowledge of the appearance and substance of the public Facebook profile pages, taken in conjunction with the following direct and circumstantial evidence was sufficient to meet the threshold admissibility requirement set forth in Evid.R. 901(B)(1)." *Id.* at ¶ 49.

**{¶15}** Regarding Appellant's argument that this evidence unfairly prejudiced the jury, Appellant contends that the photograph along with the state's closing statement were prejudicial. The state noted during closing that Appellant "was hurt badly. You saw the pictures; you'll see them more. * * * He's hurt. He has to go home. He has to convalesce. He has to go to the rap concert." (2/22/16 Tr., p. 587.)

**{¶16}** The record on appeal does not include the photograph at issue. However, from Appellant's testimony on cross-examination and from Appellant's brief, there is no indication that the contents of the photo were gruesome, inflammatory or otherwise so prejudicial that it would unreasonably inflame the jury against Appellant. See *State v. Tingler,* 31 Ohio St.2d 100, 285 N.E.2d 710 (1972). The photograph was properly introduced into evidence and authenticated by Appellant's own testimony on cross-examination.

**{¶17}** Considering all of the evidence cited by the state at trial, including, but not limited to: Appellant's DNA found on the magazine clip in Duecaster's car; no sign of a disturbance outside of Hubbert's house on Lucius but evidence of damage to the street signs as well as roadside evidence at the Ravenwood location that is consistent with Duecaster's version of the event; and Appellant's decision to flee from the scene and evade police for six days after the incident; we conclude that the Facebook photograph was properly authenticated by Appellant during his cross-examination and was not unreasonably prejudicial and the trial court did not abuse its discretion in admitting this evidence.

**{¶18}** Appellant's first assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE GUILTY CONVICTION ENTERED BY THE COURT IS AGAINST THE WEIGHT OF THE EVIDENCE.

**{¶19}** In his second assignment of error, Appellant contends his conviction was against the manifest weight of the evidence.

{¶20} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Id.*

{¶21} When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, 389. Only in exceptional circumstances will a conviction be reversed as against the manifest weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶22} In the instant case, the jury was presented with evidence from which there was a rational basis to conclude that Appellant knowingly shot Duecaster during the incident in question rather than accidentally or in self-defense as Appellant claimed during his direct examination.

{¶23} Both Duecaster and Appellant testified regarding how the incident transpired. Both acknowledged that they knew each other from a previous

incarceration.  Both acknowledged that they smoked marijuana together at the gas station before Duecaster gave Appellant a ride to Hubbert's home on Lucius.  The difference in their stories regarding when the gun altercation occurred and who instigated it was a credibility issue for the jury to determine.  *Hill, supra.*  The Youngstown police officers testified that no evidence of an altercation was found at the Lucius address, but that evidence of damaged street signs and tire marks off the road were found at the Ravenwood address.  This evidence was consistent with Duecaster's testimony.  Further, Duecaster testified that he remained hospitalized for a month due to his injuries.  Appellant claimed he had been "handicapped" by the altercation but, by his own testimony, he acknowledged that he attended a rap concert in Cleveland later that same day.  There was also evidence presented by the state that Appellant's DNA was found on a magazine clip for a gun, although the actual weapon involved was never recovered.

{¶24}  In determining whether a judgment is against the manifest weight of the evidence, an appellate court must "be guided by a presumption that the findings of the trier-of-fact were indeed correct."  *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).  The finder of fact is best able to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Id.*

{¶25} Given the evidence in the record, this verdict was not against the manifest weight of the evidence.  Appellant's second assignment of error is also without merit and is overruled.

**{¶26}** Although not presented as assigned error by Appellant or raised by the parties, a review of the record, including the sentencing hearing and judgment entry of sentence, does reveal a sentencing error in this case.

**{¶27}** As the trial court imposed consecutive sentences, it was required to make the findings enumerated in R.C. 2929.14(C)(4) at the sentencing hearing and must also incorporate those findings into the judgment entry of sentence. *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 654, ¶ 29. R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)  The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶28}**  At the sentencing hearing the trial court ordered Appellant's sentence to run consecutively and made the following findings:

Court also finds that consecutive sentences are not disproportionate to the seriousness of the offense and that the effect of this crime affected the families of the victim and the defendant.

Court finds that the defendant was on probation at the time that this offense occurred.

Court finds that defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public of future crimes by this defendant.

(6/1/16 Sentencing Hrg. Tr., pp. 9-10.)

**{¶29}**  Consequently, the trial court found R.C. 2929.12(C)(4)(a) and (b) were applicable, rendering consecutive sentences necessary.  The trial court's findings at

the sentencing hearing did comply with R.C. 2929.12(C)(4) and the mandates set forth in *Bonnell, supra.*

**{¶30}** However, as has been noted by this Court in the past, this trial court has once again failed to appropriately incorporate those findings in the written judgment entry of sentence. In the sentencing entry the trial court stated:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require offender to serve prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offenders [sic] conduct and to the danger the offender poses to the public, and if the court finds the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense. (Emphasis deleted.)

(6/16/16 J.E., p. 2.)

**{¶31}** As we have noted previously, "magic" or "talismanic" words in the judgment entry of sentence are not required. The entry must contain, however, at least an indication that the trial court made the necessary findings. *State v. Bellard,* 7th Dist.No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give reasons for

its findings, but must actually make those findings. At the sentencing hearing in this matter the court engaged in the requisite analysis pursuant to R.C. 2929.14(C)(4). However, the court's judgment entry contains only a verbatim recitation of the language of the statute. There is no indication that the trial court engaged in any findings utilizing the language of the statute as a guide. As we have noted in multiple occasions, quoting the statute in its entirety does not satisfy the requirements of *Bonnell. State v. Reinthaler,* 7th Dist. No. 16 MA 0170, 2017-Ohio-9374, ¶ 17.

**{¶32}** A trial court's failure to incorporate the statutory findings into the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court at the sentencing hearing. *Id.* at ¶ 18.

**{¶33}** The record reveals that the findings of the trial court, pronounced orally during the hearing, demonstrate the court engaged in the required statutory analysis prior to imposing consecutive sentences. The trial court's failure to incorporate those findings into the written judgment entry amounts to a clerical error necessitating a *nunc pro tunc* entry to correctly align the language of the entry with the findings made at the sentencing hearing and in accordance with *Bonnell* and its progeny.

**{¶34}** Based on the foregoing, the trial court did not err in admitting the Facebook photograph into evidence as it was properly authenticated by Appellant's own testimony. Moreover, Appellant's conviction is not against the manifest weight of the evidence. However, the matter is remanded solely so that the trial court can

enter a *nunc pro tunc* entry setting forth the applicable consecutive sentencing findings made at the sentencing hearing. Appellant's first and second assignments of error are without merit and are overruled. The judgment of the trial court is affirmed in part but remanded for the limited purpose of entering a *nunc pro tunc* entry addressing the consecutive sentencing findings made at the sentencing hearing according to law.

Donofrio, J., concurs.

Robb, P.J., concurs.