[Cite as *State v. Walker*, 2023-Ohio-998.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DIANE R. WALKER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0017**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 18 CR 136

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in part and Remanded.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, and *Atty. Jeffrey J. Bruzzese* Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee and

*Atty. Craig J. Allen,* 500 Market Street, Suite 2, Steubenville, Ohio 43952, for Defendant-Appellant.

Dated: March 24, 2023

**D'APOLITO, P.J.**

**{¶1}** Appellant, Diane R. Walker, appeals from the July 2, 2021 judgment of the Jefferson County Court of Common Pleas convicting and sentencing her to six years in prison on two counts of felonious assault, felonies of the second degree, following a trial by jury.[1] On appeal, Appellant asserts her convictions were not supported by sufficient evidence and are against the manifest weight of the evidence. Appellant also alleges the trial court erred in imposing a consecutive sentence. For the reasons stated, this court concludes Appellant's convictions for felonious assault were supported by sufficient evidence and by the manifest weight of the evidence. However, regarding Appellant's consecutive sentence, although the trial court complied with the dictates of R.C. 2929.14(C)(4) at the sentencing hearing, it failed to additionally incorporate the findings into its sentencing entry. Accordingly, this court affirms in part and remands the matter to the trial court for the limited purpose of entering a nunc pro tunc entry addressing the consecutive sentence findings made at the sentencing hearing.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On September 12, 2018, Appellant was indicted by the Jefferson County Grand Jury on two counts of felonious assault, felonies of the second degree in violation of R.C. 2903.11(A)(2). Appellant retained counsel and pled not guilty at her arraignment.

**{¶3}** On June 10, 2019, Appellant filed a "Motion To Suppress Evidence And To Dismiss Indictment." Following a hearing, the trial court denied Appellant's motion on September 10, 2019.

**{¶4}** A trial by jury commenced on June 16, 2021.[2] Appellee, the State of Ohio, presented three witnesses: Sergeant Matt Henderson with the Jefferson County Sheriff's Department; and Robert and Theresa Harris, husband and wife (together "the victims").

---

[1] Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the "Reagan Tokes Law," significantly altered the sentencing structure for many of Ohio's most serious felonies by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after March 22, 2019. This indefinite sentencing system is inapplicable here because the second degree felonies were committed in 2018.

[2] The trial by jury was delayed and continued due to Covid-19 and the shutdown ordered by the Supreme Court of Ohio.

Case No. 21 JE 0017

**{¶5}** Sergeant Henderson testified for the State that he was called to the marital residence of Patrick Howell and Appellant on August 19, 2018. (6/16/2021 Trial by Jury Tr., p. 177). The couple is now divorced but were married at the time of the incident at issue. (*Id.* at p. 241). The nature of the call was a report of gunshots fired. (*Id.*) When Sergeant Henderson arrived on-scene, he saw Patrick and the victims in the road. (*Id.* at p. 179). Patrick and Robert are brothers. (*Id.*) Patrick and the victims were calm and cooperative. (*Id.* at p. 180-181). Sergeant Henderson indicated Appellant came out of the house and stated she was "scared [and] had fired two rounds from the garage to scare Patrick away." (*Id.* at p. 182). Apparently Patrick and Appellant had marital problems and Patrick went to the residence to retrieve his Harley Davison motorcycle from the garage. (*Id.* at p. 178, 182).

**{¶6}** While on-scene, Sergeant Henderson also watched videos of the incident, which were captured by the victims on their cell phones and admitted into evidence. (*Id.* at p. 182-183); (State's Exhibit 6, both videos). Theresa's phone recorded the incident in full. (*Id.* at p. 183). Sergeant Henderson testified "you can hear him yell at - - Patrick yells at his brother Robert, 'Call the cops, She's [Appellant] got a gun[.]'" (*Id.*) "[Appellant] steps out of the garage, levels the rifle at the car, and fires one shot. You can hear it hit the car" where the victims were occupants. (*Id.*) The .22 rifle, which was retrieved from Appellant's bedroom closet, was admitted into evidence. (*Id.* at p. 184); (State's Exhibit 1). Sergeant Henderson explained, "Being that she [Appellant] admitted to firing the gun, we did not submit it to the lab. We didn't need to prove that she had fired a gun. She admitted to it of her own will." (*Id.* at p. 186). Two shell casings were admitted into evidence. (*Id.*); (State's Exhibits 2 and 3). Appellant fired the second round at the victims from her front porch. (*Id.* at p. 187). The second bullet hit the right front passenger tire of the victims' vehicle. (*Id.* at p. 189). The tire was admitted into evidence.[3] (State's Exhibit 4).

**{¶7}** Robert testified for the State that Patrick and Appellant had gotten into an argument the day before the incident. (6/16/2021 Trial by Jury Tr., p. 222). Patrick had

---

[3] Appellant claims the State presented no forensic evidence that a bullet struck the vehicle, specifically the tire. (6/17/2022 Appellant's Brief, p. 4). However, the State produced the tire itself complete with a bullet hole at the trial by jury. (State's Exhibit 4).

Case No. 21 JE 0017

called and requested deputy assistance in retrieving his motorcycle from the marital home but they were "really busy" and could not send anyone out. (*Id.* at p. 225). Appellant sent a text message to Patrick indicating that she was not home. (*Id.* at p. 227); (State's Exhibit 5).

{¶8} The victims drove Patrick to the marital home to pick up his motorcycle. (*Id.* at p. 223). Robert parked the vehicle, a 2004 Honda CR-V, in the street and the victims recorded the entire exchange on their cell phones. (*Id.* at p. 224, 235). Robert was seated in the driver's seat and Theresa was in the rear. (*Id.* at p. 234). The victims had no weapons and did not threaten or provoke Appellant in any manner. (*Id.* at p. 233-234). Patrick also had no weapons and did not threaten or provoke Appellant. (*Id.* at p. 237). Robert testified they would never have gone to the home without a police escort if they had known that Appellant was, in fact, home, contrary to her text message revealing she was not. (*Id.* at p. 238); (State's Exhibit 5).

{¶9} Theresa testified for the State in a similar manner as Robert. Theresa said she videotaped their presence because she did not "want to get accused of destroying any property or even being on the property" as Patrick and Appellant's marriage situation "wasn't the best." (*Id.* at p. 270, 274). Theresa said she was seated in the rear of the vehicle on the driver's side. (*Id.* at p. 275). Theresa became nervous after hearing that Appellant had a gun. (*Id.* at p. 276). The vehicle had a flat tire as a result of one of the gunshots. (*Id.* at p. 277).

{¶10} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶11} Appellant then took the stand and testified that on the day before the incident, she did not feel well because she had not taken her medication (Effexor) for about five days and alleged that Patrick refused to get it for her. (*Id.* at p. 313). Appellant wanted Patrick to take her to the hospital but he was drunk. (*Id.* at p. 313-314). Appellant "took that beer can and threw it right at his forehead and told him to get the hell out of [her] house" and "the cops were called." (*Id.* at p. 314-315).

{¶12} On the day at issue, Appellant heard something in her garage and went outside with her gun. (*Id.* at p. 325). "At that point, [Appellant] just wanted everybody off [her] land. [She] wanted them away from [her] house. So [she] went out, [she] pointed

the gun * * * [i]t was up, but then [she] lowered it and shot towards the ground with the gun." (*Id.* at p. 328). Appellant said she only intended to "scare them off [her] land." (*Id.*) Appellant claimed she never shot at the vehicle's tire. (*Id.* at p. 330-331).

{¶13} On cross-examination, Appellant testified there was no protection order against Patrick which would have prevented him from being at the marital home. (*Id.* at p. 343). Appellant said she pointed the gun down, yet she hit the vehicle in "the opposite direction." (*Id.* at p. 348-349). Appellant stated, "I have no clue how that would have happened." (*Id.* at p. 349). Appellant then said she fired gunshots in the victims' "general direction." (*Id.* at p. 350). Appellant agreed that the victims never threatened or provoked her in any manner. (*Id.* at p. 351). Although Appellant testified she shot towards the ground, the video demonstrates the contrary. (State's Exhibit 6). Appellant concedes "[i]t's a pretty damning video." (*Id.* at p. 328).

{¶14} Following the trial by jury, Appellant was found guilty on both counts of felonious assault as contained in the indictment.

{¶15} A sentencing hearing was held on June 28, 2021. After considering the record, the oral statements, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the consecutive sentence findings pursuant to R.C. 2929.14(C)(4), at the sentencing hearing, the trial court sentenced Appellant on July 2, 2021, to three years on count one and three years on count two, consecutive to each other, for an aggregate prison term of six years. The court notified Appellant that post-release control is mandatory for a period of three years.

{¶16} Appellant filed a timely appeal and raises four assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED WHEN IT DID NOT INCLUDE A FINDING REQUIRED BY R.C. 2929.14(C)(4) IN ITS SENTENCING JUDGMENT ENTRY DATED JULY [2], 2021.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED WHEN IT FOUND THAT CONSECUTIVE SENTENCES WERE NECESSARY TO PUNISH APPELLANT AND TO**

**PROTECT THE PUBLIC FROM FUTURE CRIME AND WERE NOT DISPROPORTIONATE TO THE SERIOUSNESS OF APPELLANT'S CONDUCT.**

{¶17} In her first and second assignments of error, Appellant takes issue with her consecutive sentence. Thus, as Appellant's assignments are interrelated, we will address them together for ease of discussion.

{¶18} This court utilizes R.C. 2953.08(G) as the standard of review in all felony sentencing appeals. *State v. Michaels*, 7th Dist. Mahoning No. 17 MA 0122, 2019-Ohio-497, ¶ 2, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶19} R.C. 2953.08(G) states in pertinent part:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2)(a)-(b).

{¶20} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

{¶21} R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are (1) "to protect the public from future crime by the offender and others"; and (2) "to punish the offender * * * using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶22} R.C. 2929.12 provides a nonexhaustive list of sentencing factors the trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. The court that imposes a felony sentence "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). The factors a trial court may consider include the "more serious" factors, such as "[t]he physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim" and "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(1) and (2). The court may also consider the "less serious" factors, any recidivism factors, and any mitigating factors listed in R.C. 2929.12(C)-(F).

> R.C. 2929.11 does not require the trial court to make any specific findings as to the purposes and principles of sentencing. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. Similarly, R.C. 2929.12 does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

*State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 36.

Case No. 21 JE 0017

**{¶23}** "'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.)." *State v. Burkhart*, 7th Dist. Belmont No. 18 BE 0020, 2019-Ohio-2711, ¶ 16.

**{¶24}** In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, the Supreme Court of Ohio has indicated that the language in *Marcum* is dicta. *Id.* at ¶ 27 ("The statements in *Marcum* at ¶ 23 suggesting that it would be 'fully consistent' with R.C. 2953.08(G) for an appellate court to modify or vacate a sentence when the record does not support the sentence under R.C. 2929.11 or 2929.12 were made only in passing and were not essential to this court's legal holding.") In *Jones,* the Court held that "R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. The Court explained that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Thus, under *Jones*, an appellate court errs if it relies on the dicta in *Marcum* and modifies or vacates a sentence "based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12." *Id.* at ¶ 29; *see also State v. Dorsey*, 2nd Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17.

**{¶25}** Pursuant to *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, appellate courts shall no longer analyze whether those sentences are unsupported by the record. Rather, we simply must determine whether those sentences are contrary to law. *See Dorsey, supra,* at ¶ 18.

> A sentence is considered to be contrary to law if it falls outside of the statutory range for the particular degree of offense; if the trial court failed to properly consider the purposes and principles of felony sentencing as enumerated in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12; or if the trial court orders consecutive sentences and does not make the necessary consecutive sentence finding.

*Burkhart, supra,* at ¶ 12.

{¶26} Regarding consecutive sentences, R.C. 2929.14(C)(4) states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the

findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

*State v. Thomas*, 7th Dist. Mahoning No. 18 MA 0025, 2020-Ohio-633, ¶ 41.

**{¶27}** In this case, Appellant alleges the record does not support a consecutive sentence. Appellant stresses she "has experienced psychological trauma since early childhood[,]" has signs of "mental illness," and her "alcohol addiction" "has contributed to her criminal convictions." (6/17/2022 Appellant's Brief, p. 12). Appellant maintains she "is not a cold, calculating predator, but a mentally ill individual who made a poor decision to shoot a firearm in the direction of an occupied motor vehicle." (*Id.* at p. 13). Appellant claims "[t]he Diane Walker who was sentenced to consecutive three-year prison terms on June 2[8], 2021 was not the same Diane Walker who discharged a firearm at the motor vehicle occupied by Robert Harris and Theresa Harris on August 19, 2018." (*Id.*) In addition, Appellant asserts that although the trial court made an oral pronouncement of the requisite R.C. 2929.14(C)(4) consecutive sentence findings at the sentencing hearing, it failed to additionally incorporate those findings into its sentencing entry. (*Id.* at 8-9).

**{¶28}** The State argues that consecutive sentences were warranted as this case involves "two (2) separate victims with two (2) separate acts at different intervals each of which constituted a felonious assault of each victim." (8/2/2022 Appellee's Brief, p. 2). The State conceded at oral argument that the trial court failed to additionally incorporate the consecutive sentence findings made at the sentencing hearing into its sentencing entry.

**{¶29}** Upon review, we agree with the State that the trial court did not err in imposing a consecutive sentence upon Appellant. However, we also agree with both

parties that although the court made an oral pronouncement of the requisite R.C. 2929.14(C)(4) consecutive sentence findings at the sentencing hearing, it failed to additionally incorporate those findings into its sentencing entry.

{¶30} At the sentencing hearing, the judge heard from the prosecutor on behalf of the State (who recommended a consecutive sentence), from defense counsel on behalf of Appellant, from Jolie Brams, Ph.D. (Clinical and Forensic Psychologist),[4] and from Appellant (who apologized). The judge concluded by stating the following:

> THE COURT: The Court has then considered the record, the oral statements, the criminal history, I've considered Defendant's Exhibits A through D, as well as defense counsel's statement * * * employers' letters, * * * treatment records, [and] also the screening records which show her history of substance abuse, the age it started, and things like that. So the Court has considered that as well. The Court is guided by - - and I believe I mentioned her criminal history. The Court has considered all of that, consistent with and in consideration of the purposes and principles of sentencing.
>
> The Court is guided by those overriding purposes of felony sentencing, which are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions the court has determined accomplishes those purposes without imposing an unnecessary burden on state or local government resources.
>
> In light of that guidance, the Court has considered the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating offender, and making restitution to the victim of the offense, the public, or both.

---

4. Dr. Brams did not provide therapy to Appellant but met with and evaluated her and opined that Appellant does not have the same type of ability to control her actions as most others. Dr. Brams described Appellant's childhood, her self-defeating behaviors and substance abuse, and her Post-Traumatic Stress Disorder (PTSD).

In exercising its discretion, the Court has considered the factors listed in 2929.12(B) and (C) relating to the seriousness of her conduct. I find that none of the more serious factors apply, other than those that are inherent with this offense.

However, to be clear, this is - - I should make that finding. She was convicted of two counts of felonious assault, in contravention of 2903.11(A)(2), two counts, both felonies of the second degree with separate victims.

There was a presumption for prison. Defense counsel has put on mitigating factors in that regard, and this Court has considered those.

Back to the more serious factors, again, I find there's nothing more serious, other than those elements that are contained in the crime itself.

In terms of less serious, I don't find that the victims induced or facilitated the offense. I do not find she was strongly provoked. I do not find that no physical harm to persons or property was expected or caused. When you point a gun at someone, you have to expect that there's some risk of either physical harm or property damage, that type of thing.

That there is substantial grounds for mitigation, I believe there are some grounds for mitigation. * * *

The Court has also considered the [Ohio Risk Assessment System] ORAS that was done, and that was a 17, which is right in the low to moderate range.

In terms of the factors contained in 2929.12(D) and (E) relating to the likelihood of the offender's recidivism, I do believe, consistent with what Dr. Brams said, that this particular Defendant - - there is a real dichotomy there. She can be very sympathetic; however, the flipside of that is the impulsiveness of her actions and her poor judgment. That was supported

by not only [another's] evaluation of her - - the issues that she has, but Dr. Brams as well.

I think, clearly, if you would ask the Defendant at this point in time if that decision to pick up a gun was impulsive, I think she would have a hard time arguing with the Court in that regard.

I do not find that she does not have remorse. * * * I do find that the Defendant does, in fact, show some remorse.

In terms of - - the Defendant also has a very long history. Although misdemeanor[s], nonetheless, it's encompassed two states, DUI's, 2008, 2009, a menacing charge in 2010, multiple calls for domestic violence. As the State aptly points out, they don't even need to look up your address anymore. They know. That's how frequently they are called to your house. DUI in Marshall County in 2009; that may have been - - the Court has considered all of those things.

In terms of recidivism, again, the Court considers all of the issues that you have laid forward and laid out with Dr. Brams, and the Court fully appreciates that. Again, I come back to the impulsivity and poor judgment.

Your perspective is distorted. * * *

* * *

However, what the Court struggles with in this case * * * you focused your anger and your distorted judgment onto people who had really done nothing. * * * The fact that Dr. Brams called this a knee-jerk reaction, this is very troubling in that the Court - - part of what I need to do is to protect the public - - protect the public.

* * *

* * * [T]he self-destructive substance abuse, that all has got - - it has escalated from these misdemeanors, multiple phone calls from - - to the Jefferson County Sheriff's Department. This has all escalated and culminated into exactly where we find ourselves here today, the pattern of violence, domestic violence, that has been going on for more than fourteen years, including that involving your children as well, your daughter, the living conditions.

* * * But also unfortunately is that [underlying mental health issues] results in posing a great, great danger to society.

* * * I believe [a community control sanction] would not adequately punish and it would demean the seriousness of the offense to which she finds herself convicted.

On Count One, felonious assault, you'll be sentenced to three years in the penitentiary.

As to Count Two, felonious assault, you will be sentenced to three years in the penitentiary.

I'm not going to impose a fine.

Now, whether or not these are to run consecutive with each other, these were not committed while you were awaiting trial, the harm was not so great or unusual. Where the Court struggles is whether or not, in fact, your criminal history demonstrates that consecutive sentences are necessary to protect the public.

I believe a period of three years is significant and I've given you three years on each of the victims.

You shot twice. You shot twice. You walked - - the video - - the video was very damning. You walked by the guy that was abusive to you. You walked by him and focused your anger and ire and impulsivety, all of whatever it is

you have inside of your head that you said you can't get out of, on these victims.

I believe in order to punish you and protect the public from future crime, that consecutive sentences are not, in fact, disproportionate to the seriousness of this conduct. Those two counts will be served consecutive to one another, for a total of six years in the penitentiary.

The Court does not make those findings lightly. * * *

* * *

You will have a mandatory period of post-release control. It's a three-year mandatory period. * * *

* * *

You have the right to appeal this case. * * *

(6/28/2021 Sentencing Hearing Tr., p. 492-505).

**{¶31}** In its July 2, 2021 sentencing entry, the trial court stated:

Defendant was given an opportunity to speak and to present witnesses on her behalf and was afforded all of her rights pursuant to Criminal Rule 32. The Court then considered the record, oral statements, the Victims were given the opportunity to make a statement and declined to do so, NCIC, ORAS, and other criminal history consistent with and in consideration of the purposes and principles of sentencing.

The Court is guided by the overriding purposes of felony sentencing, which are to protect the public from future crime by the Offender and others, to punish the offender and to promote the effective rehabilitation of the offender using the minimum sanctions that the Court has determined accomplishes those purposes without imposing an unnecessary burden on State or local government resources.

In light of that guidance, the Court has considered the need for incapacitating the Offender, deterring the Offender and others from future crime, rehabilitating the Offender, and making restitution to the victim of the offense, the public, or both. In exercising its discretion, the Court has considered the factors set forth in R.C. 2929.12(B) & (C) relating to the seriousness of the conduct, the factors provided in R.C. 2929.12(D) & (E) relating to the likelihood of the Offender's recidivism and the factors set forth in R.C. 2929.12(F), pertaining to the Offender's service in the armed forces of the United States, and in addition has considered all other factors that are relevant to achieving those purposes and principles of sentencing and that apply to this particular Defendant in this particular case.

The factors indicating that the Offender's conduct is more serious than conduct constituting the Offense, the Court finds that none apply.

In consideration of the factors that indicate that the Offender's conduct is less serious than conduct normally constituting the offense, the Court has considered and finds that none apply.

The Court has further considered and finds the following factors indicating that the Offender is likely to commit future crimes:

(1) Has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and failures to acknowledge pattern of drug or alcohol abuse or refuses treatment for the drug or alcohol abuse;

(2) ORAS Score: 17

In consideration of the factors indicating that the Offender is not likely to commit future crimes the Court finds:

(1) Offense occurred under circumstances not likely to recur;

(2) Offender genuinely remorseful;

Case No. 21 JE 0017

(3) ORAS Score: 17

Further, this Court finds that Community Control Sanctions or a combination of Community Control Sanctions would not adequately punish the offender and protect the public from future crime and a Community Control Sanction or a combination of Community Control Sanctions would not demean the seriousness of these offenses.

* * *

The Court must make findings to impose consecutive sentences as required by R.C. 2929.14(C)(4) necessary to punish the offender or protect the public from future crime and not disproportionate to seriousness of conduct and danger posed by Defendant and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct.

* * *

As part of her Sentence, and pursuant to R.C. 2967.28, the Defendant was further informed that upon completion of the prison term, the Defendant shall be subject to a three (3) year mandatory period of supervision under POST-RELEASE CONTROL. * * *

* * *

The Court advised the Defendant of her rights to appeal in accord with R.C. 2953.03(C) and Crim.R. 32(B)(1-2).

* * *

(7/2/2021 Sentencing Entry, p. 1-4).

{¶32} The record reveals the trial court considered the purposes and principles of felony sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12. The court also properly advised Appellant regarding post-

release control. The court imposed a three year sentence on each of the felonious assault counts which is within the statutory range for the second degree felony offenses. R.C. 2929.14(A)(2)(b) ("For a felony of the second degree committed prior to the effective date of this amendment [April 12, 2021], the prison term shall be a definite term of two, three, four, five, six, seven, or eight years.")

**{¶33}** Regarding consecutive sentences under R.C. 2929.14(C)(4), at the sentencing hearing, the trial court found that these offenses "were not committed while [Appellant was] awaiting trial [and] the harm was not so great or unusual." (6/28/2021 Sentencing Hearing Tr., p. 499). Thus, the court thereby dismissed R.C. 2929.14(C)(4)(a) and (b) as statutory reasons to impose a consecutive sentence. However, with respect to Appellant's history of criminal conduct under R.C. 2929.14(C)(4)(c), the court did announce its findings on the record that consecutive sentences were necessary "to punish" Appellant, to "protect the public from future crime," and that consecutive sentences were "not, in fact, disproportionate to the seriousness of this conduct." (*Id.* at p. 500). Accordingly, it is clear the court complied with the dictates of R.C. 2929.14(C)(4) in making the requisite consecutive sentence findings at the sentencing hearing. *See Thomas, supra,* at ¶ 41.

**{¶34}** Problematically however, Appellant and the State correctly point out, and the record establishes, that the trial court failed to additionally incorporate the consecutive sentence findings into its sentencing entry. *Id*; *Bonnell, supra,* at ¶ 37. The court only merely stated what the law requires, i.e., that it "*must make* findings to impose consecutive sentences[,]" but the sentencing entry does not include R.C. 2929.14(C)(4) findings. (7/2/2021 Sentencing Entry, p. 3). Thus, the court erred because it failed to incorporate its consecutive sentence findings made at the sentencing hearing into its sentencing entry. *State v. Yukon*, 7th Dist. Mahoning No. 20 MA 0005, 2020-Ohio-4738, ¶ 14, citing *State v. Black*, 7th Dist. Mahoning No. 16 MA 0085, 2018-Ohio-1342, ¶ 34; *State v. Lung*, 12th Dist. Clermont No. CA2014-12-081, 2015-Ohio-3833, ¶ 19-20 (remanding matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to reflect the trial court's statutory findings under R.C. 2929.14(C)(4)).

(However, a) trial court's failure to incorporate the statutory findings into the sentencing entry after properly making those findings at the sentencing

Case No. 21 JE 0017

hearing does not render the sentence contrary to law; such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court at the sentencing hearing.

*Yukon, supra,* at ¶ 14, quoting *Black, supra*, at ¶ 32.

**{¶35}** Accordingly, the record before us reveals that the findings of the trial court, pronounced orally during the sentencing hearing, demonstrate the court engaged in the required statutory analysis prior to imposing a consecutive sentence. The court's failure to incorporate those findings into the written sentencing entry amounts to a clerical error necessitating a nunc pro tunc entry to correctly align the language of the entry with the findings made at the sentencing hearing and in accordance with *Bonnell* and its progeny. *See Yukon, supra,* at ¶ 15; *Black, supra,* at ¶ 33.

**{¶36}** Appellant's first and second assignments of error have merit, in part, to the extent provided.

## ASSIGNMENT OF ERROR NO. 3

**THE JURY'S VERDICT FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT, IN VIOLATION OF R.C. 2903.11(A)(2), WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

## ASSIGNMENT OF ERROR NO. 4

**THE JURY'S VERDICT FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT, IN VIOLATION OF R.C. 2903.11(A)(2), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.**

**{¶37}** In her third and fourth assignments of error, Appellant suggests her convictions for felonious assault were not supported by sufficient evidence and are against the manifest weight of the evidence. Thus, as Appellant's assignments are interrelated, we will address them in a consolidated fashion.

"When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

**{¶38}** "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

**{¶39}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

**{¶40}** Appellant takes issue with the guilty finding on her two counts of felonious assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2), which states in

part: "(A) No person shall knowingly * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2901.22, "Culpable mental states," defines "knowingly" in part: "(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶41} As stated, Sergeant Henderson testified for the State that he was called to Patrick's and Appellant's marital residence on August 19, 2018 on a report of gunshots fired. (6/16/2021 Trial by Jury Tr., p. 177). When Sergeant Henderson arrived on-scene, he saw Patrick and the victims in the road. (*Id.* at p. 179). Patrick and the victims were calm and cooperative. (*Id.* at p. 180-181). Sergeant Henderson indicated that Appellant came out of the house, and stated she was "scared [and] had fired two rounds from the garage to scare Patrick away." (*Id.* at p. 182).

{¶42} While on-scene, Sergeant Henderson also watched videos of the incident, which were captured by the victims on their cell phones and admitted into evidence. (*Id.* at p. 182-183); (State's Exhibit 6, both videos). Theresa's phone recorded the incident in full. (*Id.* at p. 183). Sergeant Henderson testified "you can hear him yell at - - Patrick yells at his brother Robert, 'Call the cops, She's [Appellant] got a gun[.]'" (*Id.*) "[Appellant] steps out of the garage, levels the rifle at the car, and fires one shot. You can hear it hit the car." (*Id.*) The .22 rifle, which was retrieved from Appellant's bedroom closet, was admitted into evidence. (*Id.* at p. 184); (State's Exhibit 1). Sergeant Henderson explained, "Being that she [Appellant] admitted to firing the gun, we did not submit it to the lab. We didn't need to prove that she had fired a gun. She admitted to it of her own will." (*Id.* at p. 186). Two shell casings were admitted into evidence. (*Id.*); (State's Exhibits 2 and 3). Appellant fired the second round at the victims from her front porch. (*Id.* at p. 187). The second bullet hit the right front passenger tire of the victims' vehicle. (*Id.* at p. 189). The tire was admitted into evidence. (State's Exhibit 4).

{¶43} Robert testified for the State that Patrick and Appellant had gotten into an argument the day before the incident. (6/16/2021 Trial by Jury Tr., p. 222). Patrick had called and requested deputy assistance in retrieving his motorcycle from the marital home but they were "really busy" and could not send anyone out. (*Id.* at p. 225). Appellant sent

a text message to Patrick indicating that she was not home. (*Id.* at p. 227); (State's Exhibit 5).

**{¶44}** The victims drove Patrick to the marital home to pick up his motorcycle. (*Id.* at p. 223). Robert parked the vehicle in the street and the victims recorded the entire exchange on their cell phones. (*Id.* at p. 224, 235). Robert was seated in the driver's seat and Theresa was in the rear. (*Id.* at p. 234). The victims had no weapons and did not threaten or provoke Appellant in any manner. (*Id.* at p. 233-234). Patrick also had no weapons and did not threaten or provoke Appellant. (*Id.* at p. 237). Robert testified they would never have gone to the home without a police escort if they had known that Appellant was, in fact, home, contrary to her text message revealing she was not. (*Id.* at p. 238); (State's Exhibit 5).

**{¶45}** Theresa testified for the State in a similar manner as Robert. Theresa said she videotaped their presence because she did not "want to get accused of destroying any property or even being on the property" as Patrick and Appellant's marriage situation "wasn't the best." (*Id.* at p. 270, 274). Theresa said she was seated in the rear of the vehicle on the driver's side. (*Id.* at p. 275). Theresa became nervous after hearing that Appellant had a gun. (*Id.* at p. 276). The vehicle had a flat tire as a result of one of the gunshots. (*Id.* at p. 277).

**{¶46}** Appellant then took the stand and testified that on the day before the incident, she did not feel well because she had not taken her medication (Effexor) for about five days and alleged that Patrick refused to get it for her. (*Id.* at p. 313). Appellant wanted Patrick to take her to the hospital but he was drunk. (*Id.* at p. 313-314). Appellant "took that beer can and threw it right at his forehead and told him to get the hell out of [her] house" and "the cops were called." (*Id.* at p. 314-315).

**{¶47}** On the day at issue, Appellant heard something in her garage and went outside with her gun. (*Id.* at p. 325). "At that point, [Appellant] just wanted everybody off [her] land. [She] wanted them away from [her] house. So [she] went out, [she] pointed the gun * * * [i]t was up, but then [she] lowered it and shot towards the ground with the gun." (*Id.* at p. 328). Appellant said she only intended to "scare them off [her] land." (*Id.*) Appellant claimed she never shot at the vehicle's tire. (*Id.* at p. 330-331).

**{¶48}** On cross-examination, Appellant testified there was no protection order against Patrick which would have prevented him from being at the marital home. (*Id.* at p. 343). Appellant said she pointed the gun down, yet she hit the vehicle in "the opposite direction." (*Id.* at p. 348-349). Appellant stated, "I have no clue how that would have happened." (*Id.* at p. 349). Appellant then said she fired gunshots in the victims' "general direction." (*Id.* at p. 350). Appellant agreed that the victims never threatened or provoked her in any manner. (*Id.* at p. 351). Although Appellant testified she shot towards the ground, the video demonstrates the contrary. (State's Exhibit 6). Appellant concedes "[i]t's a pretty damning video." (*Id.* at p. 328).

**{¶49}** Pursuant to *Jenks, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of felonious assault were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

**{¶50}** Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of felonious assault. *Thompkins, supra*, at 387.

**{¶51}** Appellant's third and fourth assignments of error are without merit.

## CONCLUSION

**{¶52}** For the foregoing reasons, Appellant's first and second assignments of error are well-taken, in part, to the extent provided and her third and fourth assignments of error are not well-taken. The July 2, 2021 judgment of the Jefferson County Court of Common Pleas convicting and sentencing Appellant to six years in prison on two counts of felonious assault following a trial by jury is affirmed in part and remanded for the limited purpose of entering a nunc pro tunc entry addressing the consecutive sentence findings made at the sentencing hearing.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 21 JE 0017

_____

For the reasons stated in the Opinion rendered herein, the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed in part and remanded to the trial court for the limited purpose of entering a nunc pro tunc entry addressing the consecutive sentence findings made at the sentencing hearing.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**